**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

KIMBERLY C.,[1]     : Case No. 2:23-cv-01469

   Plaintiff,    :

         : Magistrate Judge Caroline H. Gentry

vs.        : (by full consent of the parties)

         :

COMMISSIONER OF THE SOCIAL :
SECURITY ADMINISTRATION,  :

         :

   Defendant.    :

---

## DECISION AND ORDER

Plaintiff filed an application for Disability Insurance Benefits in March 2018. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council remanded the decision for further consideration of several issues. Another ALJ held a hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff filed an action with this Court.[2]  The Court remanded the case to the Commissioner under Sentence Four of 42

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Assigned to District Judge Michael H. Watson, Case Number 2:21-cv-00595.

U.S.C. § 405(g), pursuant to a joint stipulation by the parties. The Appeals Council remanded the case pursuant to the District Court's order. The same ALJ held a hearing and issued the third unfavorable decision in this case—again concluding that Plaintiff was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed what is now her second action with this Court.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for an immediate award of benefits.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since March 1, 2018. At that time, she was sixty-one years old. Accordingly, Plaintiff was considered "closely approaching retirement age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(e). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 6) is summarized in the ALJ's decision ("Decision," Doc. No. 6-9 at PageID 1080-1108), Plaintiff's Statement of Errors ("SE," Doc. No. 7), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 8), Plaintiff's Reply Memorandum ("Reply," Doc. No. 9), and Plaintiff's Notice of Additional Authority ("Notice," Doc. No. 10). Rather than

2

repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the

agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:    Plaintiff did not engage in substantial gainful activity from March 1, 2018, the alleged onset date, to June 30, 2022, her date last insured.

Step 2:    She had the severe impairments of rheumatoid arthritis, fibromyalgia, osteoarthritis of the right knee and left hip, obesity, asthma, lumbar stenosis and degenerative disc disease, insertional right Achilles tendinitis, degenerative joint disease of the hands, polyneuropathy, migraine headaches, and coronary artery disease.

Step 3:    She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of sedentary work as defined in 20 CFR § 404.1567(a), subject to the following limitations: "[F]oot control operation is limited to the occasional level. [Plaintiff] requires a sit/stand option and must be allowed to change positions after 60 minutes to sit or stretch for 1-2 minutes. Pushing and pulling is limited as per exertional weight limits and to the occasional level. [Plaintiff] can never climb ladders, ropes, scaffolds. She can occasionally climb ramps or stairs, and balance stoop, kneel, crouch[,] and crawl. She cannot perform commercial driving. Overhead reaching is limited to occasional (forward and lateral reaching is unlimited). Handling, fingering, and feeling are limited to the frequent level. [Plaintiff] is limited to occasional exposure to irritants such as fumes, odors, dusts and gases[,] and poor ventilation. She should have no use of moving or hazardous machinery and no exposure to unprotected heights. No extreme

> bright lighting (like stage and bright inspection lights and headlights), normal office lighting is acceptable."
>
> Through the date last insured, Plaintiff was capable of performing her past relevant work as a secretary and administrative assistant.

(Decision, Doc. No. 6-9 at PageID 1086-99.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and so was not entitled to benefits. (*Id.* at PageID 1099-1100.)

## B. Plaintiff's Upper Extremity Impairments

### 1. Subjective complaints

Plaintiff complained that rheumatoid arthritis and osteoarthritis caused pain and cramping in her hands and fingers. (AR, Doc. No. 6-6 at PageID 397, 436.) Plaintiff testified at the February 2019 hearing that she experienced stiffness, soreness, and swelling of the hands, and had difficulty with activities such as buttoning shirts, tying shoes, and using zippers. (AR, Doc. No. 6-2 at PageID 138-39.) She also had difficulty with writing and typing, and occasionally dropped things. (*Id.* at PageID 139.) Plaintiff testified that she tried to use an iPad to send emails but found it difficult due to her finger curvature. (*Id.* at PageID 140.) She said that joint stiffness lasted for seven to eight hours after she woke up in the mornings. (*Id.*) Plaintiff stated that she tried to relieve her pain and stiffness by moving around, taking hot showers, using a heating pad, and using Aspercreme, but these efforts helped only temporarily. (*Id.*) Plaintiff estimated that she could comfortably lift and carry no more than five pounds. (*Id.* at PageID 148.)

Plaintiff complained of similar upper extremity pain, soreness, and stiffness at the August 2020 and January 2023 hearings. (AR, Doc. No. 6-2 at PageID 95-96; AR, Doc.

6

No. 6-9 at PageID 1113-14.) She estimated that she could type for approximately five to fifteen minutes at a time and write for approximately ten minutes before needing to rest her hands. (AR, Doc. No. 6-2 at PageID 98; AR, Doc. No. 6-9 at PageID 1116-17.) She estimated that she needed to relax or rub her hands for ten to twenty minutes before using them again. (AR, Doc. No. 6-2 at PageID 101; AR, Doc. No. 6-9 at PageID 1117.) In August 2020, Plaintiff again complained of difficulty with zipping and buttoning clothes, and said that she sometimes dropped items. (AR, Doc. No. 6-2 at PageID 98-100.) She also complained of difficulty with gross manipulation, such as opening jars and using doorknobs. (*Id.* at PageID 99.) At the January 2023 hearing, Plaintiff also complained of difficulty with raising and using her right arm, which she said started three months earlier. (AR, Doc. No. 6-9 at PageID 1114.)

### 2.    Medical records

Plaintiff began treatment with a rheumatologist by no later than February 2018, more than a year before the alleged onset date of disability. (AR, Doc. No. 6-7 at PageID 620.) She complained of symptoms including joint pain and stiffness in the fingers, as well as new-onset left hand tingling. (*Id.*) Rheumatologist Terri Horan, M.D. noted that an examination showed left-sided carpal compression. (*Id.*) She re-started Plaintiff on Arava, continued Prednisone, and prescribed wrist splints. (*Id.*)

In April 2018, Plaintiff reported some improvement with use of the wrist splints, but continued to complain of joint pain and stiffness in the shoulders, elbows, and hands. (AR, Doc. No. 6-7 at PageID 619.) At the next visit in October 2018, Plaintiff again complained of joint pain and stiffness in her shoulders, elbows, wrists, and fingers, but

7

told Dr. Horan that she had to stop taking Arava because of gastrointestinal side effects. (AR, Doc. No. 6-7 at PageID 877.)

Plaintiff regularly saw her primary care provider for her other physical conditions. Her provider noted in August 2018 that Plaintiff was seeing Dr. Horan regularly for rheumatoid arthritis but continued to complain of joint stiffness and swelling, which was "progressive [and] worsening." (AR, Doc. No. 6-7 at PageID 741.) As of July 2019, Plaintiff was taking Leflunomide and Prednisone for the condition. (*Id.* at PageID 994.)

Plaintiff began treatment at the Columbus Arthritis Center in December 2019. (AR, Doc. No. 6-7 at PageID 985.) She told Namrata Dhillon, M.D. that she experienced stiffness in several joints, including her hands and elbows. (*Id.*) She said the stiffness started in the morning, lasted approximately two to three hours, and improved "after being active." (*Id.* at PageID 986.) X-rays of the hands showed no significant abnormalities (AR, Doc. No. 6-7 at PageID 977-78.) However, Dr. Dhillon reported that the examination showed tenderness to palpation over several fingers and the left wrist, as well as diffuse tenderness to palpation over the soft tissues. (*Id.* at PageID 987.) In January 2020, Dr. Dhillon concluded that Plaintiff did not have rheumatoid arthritis and instead diagnosed osteoarthritis. (AR, Doc. No. 6-7 at PageID 957.) Plaintiff continued to complain of joint stiffness, and the examination again showed tenderness to palpation of the fingers, left wrist, and soft tissues. (*Id.* at PageID 958-60.) Dr. Dhillon prescribed Neurontin. (*Id.* at PageID 957.)

In March 2020, primary care physician Alexander Campolo, D.O. prescribed Gabapentin and Prednisone for Plaintiff's fibromyalgia. (*Id.* at PageID 915.)

Orthopedist Kevin Ouweleen, M.D. noted in May 2020 that Plaintiff was developing a curve deformity of both middle fingers and had arthritic changes in the proximal interphalangeal and distal interphalangeal joints. (AR, Doc. No. 6-8 at PageID 1012.) He diagnosed degenerative joint disease of both hands. (*Id.*)

During a visit with primary care physician Dr. Campolo in June 2020, Plaintiff complained of "major stiffness" in her joints and increased pain since her rheumatologist changed her medicine and began weaning her off of Prednisone. (AR, Doc. No. 6-8 at PageID 1045.) In July 2020, Plaintiff told Dr. Campolo that her fibromyalgia and arthritis symptoms had increased. (*Id.* at PageID 1073.) She also stated that a recent increase in her Gabapentin dosage caused dizziness and nausea. (*Id.*)

Plaintiff told rheumatologist Lydia Cortes-Betancourt, M.D. in September 2020 that she had a "hard time" using her hands and continued to experience stiffness and pain in her hands and wrists. (AR, Doc. No. 6-14 at PageID 1377.) She said that since she started to decrease her Prednisone dosage, her pain had increased from a three out of ten (with ten being the worst pain) to a seven out of ten. (*Id.* at PageID 1378.) Plaintiff also said that she experienced morning stiffness for several hours. (*Id.*) According to Dr. Cortes-Betancourt, the physical examination showed synovitis of the second and third metacarpophalangeal joints and more than eleven tender points. (*Id.* at PageID 1379.) Dr. Cortes-Betancourt restarted Prednisone and Leflunomide. (*Id.* at PageID 1380.)

At her next rheumatology visit in October 2020, Plaintiff reported some improvement with Prednisone and Leflunomide, but nevertheless reported a pain level of five out of ten. (*Id.* at PageID 1373.) Dr. Cortes-Betancourt's examination showed

9

tenderness over both wrists and the right third proximal interphalangeal joint. (*Id.* at PageID 1375.) An MRI of the hands performed in October 2020 showed synovitis. (*Id.*) Dr. Cortes-Betancourt increased Plaintiff's Leflunomide dosage. (*Id.*) During a telehealth visit later that month, Plaintiff reported that her symptoms had lessened, but had not totally resolved. (*Id.* at PageID 1369.) She stated that she stopped taking Leflunomide because it caused diarrhea. (*Id.*) Dr. Cortes-Betancourt prescribed Plaquenil. (*Id.* at PageID 1370.)

When Plaintiff saw Dr. Cortes-Betancourt in November 2020, she said that she had not yet started taking Plaquenil, and was still experiencing diarrhea despite stopping Leflunomide. Plaintiff again complained of joint pain that she estimated to be at a five to six out of ten in intensity. (*Id.* at PageID 1365.)

Medical records dated during 2021 generally document treatment for respiratory symptoms associated with asthma and several bouts of COVID-19. (*See, e.g.*, A.R., Doc. No. 6-14 at PageID 1409, 1412, 1469, 1472, 1482, 1485, 1490, 1496.) When Plaintiff followed up with her rheumatology provider in March 2022, Dr. Cortes-Betancourt noted that Plaintiff had restarted Gabapentin in February 2021 and was still taking Prednisone. (*Id.* at PageID 1392.) Plaintiff reported a pain level of two out of ten with her current medications. (*Id.*) An examination showed tenderness of several joints, including the elbows (*Id.* at PageID 1396-97.)

### 3. Medical opinion evidence

The state agency medical consultants at the initial and reconsideration levels opined that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or

carry ten pounds. (AR, Doc. No. 6-3 at PageID 175-76, 187-88.). They opined that Plaintiff did not have any manipulative limitations. (*Id.* at PageID 176, 187.)

In March 2019, treating rheumatologist Terri Horan, M.D. completed a Physical Medical Source Statement form. (AR, Doc. No. 6-7 at PageID 897-900.) Dr. Horan indicated that she had been treating Plaintiff since January 2016 for rheumatoid arthritis. (*Id.* at PageID 897.) According to Dr. Horan, Plaintiff experienced symptoms that included joint pain and stiffness in her shoulders, elbows, wrists, hands, knees, hips, back, fingers, ankles, and feet, as well as fatigue. (*Id.*) Dr. Horan noted that Plaintiff reported a pain level of eight out of ten and that her pain was worse in her fingers, hands, feet, ankles, and knees. (*Id.*) Dr. Horan identified the following clinical findings and objective signs: joint pain and stiffness in the above-identified areas, daytime sleepiness, and fatigue. (*Id.*) She also noted that Plaintiff's medications caused occasional diarrhea. (*Id.*) Regarding Plaintiff's upper extremity limitations, Dr. Horan checked boxes to indicate her opinion that Plaintiff could never lift fifty, twenty, ten, or even "[l]ess than ten pounds. (*Id.* at PageID 899.) Dr. Horan checked a box to indicate her opinion that Plaintiff had "significant limitations" with reaching, handling, and fingering, and she wrote that Plaintiff could perform grasping, turning, twisting, fine manipulation, and reaching for "0%" of the time in an eight-hour workday. (*Id.* at PageID 899.) Dr. Horan also noted that cold temperatures worsened Plaintiff's pain. (*Id.* at PageID 900.)

### 4.  The ALJ's discussion of Plaintiff's upper extremity impairments

The ALJ discussed Plaintiff's subjective complaints and the objective medical evidence regarding Plaintiff's upper extremity impairments when formulating the RFC.

11

(Decision, Doc. No. 6-9 at PageID 1093-98.) The ALJ concluded that although Plaintiff's

impairments could reasonably be expected to cause the alleged symptoms, the "intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record . . . ." (*Id.* at PageID 1093.) The ALJ

concluded that "the overall record is only somewhat supportive" of Plaintiff's alleged

pain symptoms. (*Id.*) He further stated:

> [Plaintiff's] alleged pain complaints and her alleged standing, balance
> issues, handwriting problems, irritable bowel problems, bleeding internally
> and external hemorrhoids, reaching, bending, sitting, and ADL allegations
> including dressing and showering (see Ex. 3E and 7E), all contribute to her
> limitation to the sedentary exertional level, the need for a sit/stand option,
> exertional limitations, reaching, handling, fingering, and feeling limitations,
> as well as the environmental limitations in the RFC above.

(*Id.*)

The ALJ found that the State agency medical consultants' findings were not

persuasive. (Decision, Doc. No. 6-9 at PageID 1097.) To support this conclusion, the ALJ

explained: "Nor did the BDD experts identify any limitations based on [Plaintiff's]

asthma and hand pain, which is reasonably ascribed to fibromyalgia. Evidence received at

the hearing level shows that [Plaintiff] is more limited than determined by the State

agency consultants." (*Id.*)

The ALJ likewise found that the opinion of treating rheumatologist Terri Horan,

M.D. was not persuasive. (Decision, Doc. No. 6-9 at PageID 1098.) The ALJ concluded

that Dr. Horan's recommended limitations were "extreme and appear to be based

primarily, if not exclusively, upon [Plaintiff's] subjective self-reports . . . ." (*Id.*) The ALJ

found that Dr. Horan's opinion that Plaintiff was unable to perform any significant fine

finger manipulation was "not supported by any of the objective evidence of record." (*Id.*)
The ALJ also concluded that "no objective evidence submitted contemporaneously with
the [medical source statement] . . . supports the extreme limitations assigned by the
author." (*Id.*) The ALJ also discussed a November 2017 treatment record from Dr. Horan
that noted Plaintiff had "no specific joint pain at this time" and was "feeling much better
overall" with "stiffness improving." (*Id.* (citing AR, Doc. No. 6-7 at PageID 877).)

The ALJ also cited other evidence in the record that did not support Plaintiff's
complaints. For example, the ALJ cited a May 2018 physical examination that showed
full range of motion in the extremities and no peripheral edema. (Decision, Doc. No. 6-9
at PageID 1098 (citing AR, Doc. No. 6-7 at PageID 790).) The ALJ also stated that the
2019 hand x-rays showed "no abnormal findings to support [Plaintiff's] allegations of
joint pain, stiffness, and swelling." (*Id.* (citing AR, Doc. No. 6-7 at PageID 977-78).) The
ALJ also cited a June 2020 primary care progress note that documented no abnormalities
of the upper extremities. (*Id.* (citing AR, Doc. No. 6-8 at PageID 1049).)

The ALJ acknowledged that Plaintiff's orthopedist diagnosed degenerative joint
disease of both hands in June 2020. (Decision, Doc. No. 6-9 at PageID 1098.) But he
discounted this diagnosis because "a physical therapy assessment did not identify any
upper extremity limitations." (*Id.* (citing AR, Doc. No. 6-8 at PageID 1007, 1014-16).)

The ALJ also acknowledged the orthopedist's report that Plaintiff was developing
a curve deformity of both middle fingers, as well as arthritic changes in the PIP and DIP
joints. (*Id.* (citing AR, Doc. No. 6-8 at PageID 1012.) However, he discounted these
observations because the doctor "did not include radiologic studies supporting this

13

conclusion, or any assessment of the severity of the reported arthritic changes." (*Id.*) The

ALJ further reasoned that although the orthopedist observed Plaintiff use a cane, the

doctor "did not identify any limitations in her ability to hold a cane due to problems with

grasp or manipulation." (*Id.* (citing AR, Doc. No. 6-8 at PageID 1008).)

The ALJ concluded: "Because of the inconsistencies in the above[-]described

opinion by Dr. Horan, when compared with other evidence of record, the undersigned

finds the opinion not to be persuasive, particularly with respect to [Plaintiff's] exertional

and upper extremity functional abilities." (*Id.*) The ALJ further explained:

> In summary, while [Plaintiff] has medically determinable impairments that
> could reasonably cause some symptoms and limitations, the above evidence
> shows that [Plaintiff's] testimony regarding the extent of such symptoms
> and limitations is not fully supported. However, [Plaintiff's] complaints
> have not been completely dismissed, but rather, have been included in the
> residual functional capacity to the extent that they are consistent with the
> evidence as a whole. Nevertheless, in considering the criteria enumerated in
> the Regulations, Rulings, and case law for evaluating [Plaintiff's]
> subjective complaints, [Plaintiff's] testimony was not persuasive to
> establish an inability to perform the range of work assessed herein. The
> location, duration, frequency, and intensity of [Plaintiff's] alleged
> symptoms, as well as precipitating and aggravating factors are adequately
> addressed and accommodated in the above residual functional capacity. The
> above residual functional capacity assessment is supported by the totality of
> the medical opinion evidence, the objective medical findings, [Plaintiff's]
> testimony, and other medical evidence found in the record.

(Decision, Doc. No. 6-9 at PageID 1098-99.)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because he 1) did not "build the accurate and

logical bridge" required by Social Security Ruling (SSR) 96-8p when he assessed

Plaintiff's RFC limitations; 2) failed to evaluate the medical opinion evidence pursuant to

the regulations; 3) improperly evaluated Plaintiff's fibromyalgia; and 4) failed to evaluate Plaintiff's subjective complaints pursuant to applicable regulations.[3] (SE, Doc. No. 7 at PageID 1505-12.) For the reasons discussed below, the Court finds that the ALJ's RFC is not supported by substantial evidence and will reverse the Commissioner's decision and award benefits to Plaintiff.

**A.    The ALJ's RFC Is Not Supported By Substantial Evidence**

**1.    Applicable law**

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity'"). A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

---

[3] Plaintiff alleged several other errors. She acknowledged that the additional errors "[b]y themselves . . . may not be major" individually but "deserve attention." (SE, Doc. No. 7 at PageID 1512.)

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS 140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)). Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249.

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept.

16

27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

> **2. The ALJ did not build a logical bridge between the evidence of Plaintiff's upper extremity impairments and the RFC.**

The ALJ provided only a cursory explanation of why he limited Plaintiff to the reduced range of sedentary work in the RFC. The ALJ's cursory explanation did not address how the RFC limitations account for Plaintiff's upper extremity impairments. Because the ALJ's decision did not build a logical bridge between the evidence and the ALJ's conclusions about Plaintiff's upper extremity impairments, reversal is required.

Although the ALJ provided a detailed, chronological summary of the medical evidence relating to Plaintiff's upper extremity impairments, he only summarized the evidence beginning in December 2019. (Decision, Doc. No. 6-9 at PageID 1093-97.) For the time period between the alleged onset date of disability and December 2019, the ALJ only noted that Plaintiff had "previously been diagnosed with rheumatoid arthritis" and was taking Arava and Prednisone. (*Id.* at PageID 1093.) The ALJ acknowledged that Plaintiff complained of "[two] to [three] hours of morning stiffness that improved after she was active," and reported the stiffness in her hands, elbows, low back, hips, knees, and ankles. (*Id.* at PageID 1093-94.) The ALJ cited bilateral hand x-rays that showed no significant abnormalities, but also acknowledged that examinations showed tenderness to palpation in several fingers, although with no evidence of swelling. (*Id.* at PageID 1094.)

The ALJ also cited a June 2020 primary care record that documented no significant examination abnormalities. (Decision, Doc. No. 6-9 at PageID 1094.) The ALJ noted that Plaintiff "did not mention hand pain, as she emphasized at her disability hearing six weeks later," but acknowledged that Plaintiff complained of stiffness during that visit. (*Id.*) The ALJ acknowledged that Plaintiff's orthopedist observed a curve deformity of both middle fingers and arthritic changes in some finger joints, but discounted these observations because "there was no indication" that they "were based on any radiologic studies." (*Id.*)

The ALJ acknowledged that in October 2020, a hand MRI showed synovitis and an examination showed tenderness of both wrists. (Decision, Doc. No. 6-9 at PageID 1095.) He cited records from late 2020 that documented her treatment for rheumatoid

18

arthritis and fibromyalgia. (*Id.*) The ALJ acknowledged that Plaintiff continued to complain of morning stiffness and that hand x-rays showed degenerative changes. (*Id.*) Finally, the ALJ cited a March 2022 rheumatology progress note that showed "tenderness in [ten] spots" but with normal range of motion. (*Id.*) Plaintiff was taking Prednisone and Gabapentin at that time and reported a reduced pain level of two out of ten. (*Id.*)

The ALJ concluded his review of the medical evidence by explaining why he found that Plaintiff's use of a cane was not medically necessary, why he included environmental limitations to account for Plaintiff's breathing symptoms, and how he considered Plaintiff's migraine headaches and obesity in the RFC. (Decision, Doc. No. 6-9 at PageID 1096-97.) But the ALJ did not provide a similar explanation of why he included certain limitations to account for Plaintiff's upper extremity impairments.

Defendant contends that substantial evidence supports the ALJ's RFC determination, including the limitations for frequent manipulative activities. (Mem. In Opp., Doc. No. 8 at PageID 1524.) According to Defendant, the ALJ properly considered Plaintiff's upper extremity impairments through his evaluation of the medical evidence and the medical opinion evidence. (*See id.* at PageID 1524-29.) The Court disagrees.

The ALJ did provide a detailed discussion of the medical evidence pertaining to Plaintiff's upper extremity impairments, and he did address the medical opinion evidence pursuant to applicable regulations. (Mem. In. Opp., Doc. No. 8 at PageID 1524-29 (citing Decision, Doc. No. 6-9 at PageID 1093-99).) But he erred in two respects. First, the ALJ did not explain ***how*** the RFC accommodates Plaintiff's upper extremity impairments. Instead he only broadly asserted that the range of sedentary work with the other non-

exertional limitations in the RFC (including the limitations for reaching, handling, fingering, and feeling) accounted for all of Plaintiff's impairments and pain complaints. (Decision, Doc. No. 6-9 at PageID 1093.) As noted above, the ALJ specifically explained why he did not include a limitation regarding the use of a cane, and how he accounted for Plaintiff's migraine headaches and obesity. (*Id.* at PageID 1097-98.) But he did not explain his decision that Plaintiff was capable of handling, fingering, and feeling on a frequent basis. (*See id.* at PageID 1093-99.) And the ALJ's concluding paragraph of the RFC analysis contains only conclusory, boilerplate language that the "[RFC] assessment is supported by the totality of" the evidence in the record. (*Id.* at PageID 1099.)

The ALJ also erred by failing to explain why the medical opinion evidence did not support the claimed severity of Plaintiff's upper extremity impairments. (Decision, Doc. No. 6-9 at PageID 1093-98.) For example, when the ALJ concluded that the state agency medical consultants' findings were not persuasive, he reasoned that they did not identify any limitations based on hand pain, "which is reasonably ascribed to fibromyalgia." (*Id.*) But despite this recognition, the ALJ did not explain why the objective medical evidence nevertheless supported a conclusion that Plaintiff could perform manipulative activities on a frequent (rather than occasional) basis. (*Id.*) Therefore, although the ALJ may have used the consultants' findings "as a starting point to craft Plaintiff's RFC," as Defendant contends (Mem. In Opp., Doc. No. 8 at PageID 1516), his explanation addressed only why *some* limitations for handling, fingering, and feeling were warranted, and not his conclusion that Plaintiff was capable of performing these activities on a frequent basis.

Nor does the ALJ's rejection of Dr. Horan's opinion explain his decision to limit Plaintiff to handling, fingering, and feeling on a frequent basis. Dr. Horan opined that Plaintiff was unable to perform *any* handling or fingering. (AR, Doc. No. 6-7 at PageID 899.) The ALJ's conclusion that Dr. Horan's opinion was not persuasive only bears on his decision not to completely preclude Plaintiff from performing any activities with her hands and fingers. It does not explain the ALJ's conclusion that Plaintiff is able to use her hands and fingers on a frequent basis.

The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ must "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb. 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011)).

Here, the Court is unable to determine how the ALJ addressed Plaintiff's upper extremity impairments in the RFC; more specifically. the Court cannot determine the ALJ's reasons for limiting Plaintiff to frequent handling, fingering, and feeling. The

ALJ's failure to build a logical bridge between the evidence and his conclusions prevents the Court from engaging in meaningful judicial review, and leads the Court to conclude that the RFC is not supported by substantial evidence. *Fleischer*, 774 F. Supp. 2d at 877.

### B. The ALJ's Error Is Not Harmless

The ALJ's error is not harmless. Plaintiff argues that the evidence supports stricter RFC limitations that would be work-preclusive (SE, Doc. No. 7 at PageID 1506), and the record confirms this claim. The Vocational Expert testified at the January 2023 hearing that a hypothetical individual of Plaintiff's age, education, work experience, and RFC— but with a more restrictive limitation that the individual could perform only occasional handling and fingering—would be unable to perform Plaintiff's past relevant work. (AR, Doc. No. 6-9 at PageID 1122-23.) And if Plaintiff could not perform her past relevant work, Medical-Vocational Rule 201.06 would direct a finding of "disabled" at Step Five of the Sequential Evaluation. 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00. Also, the Vocational Expert testified that an individual requiring four fifteen-minute breaks during an eight-hour workday (in addition to regularly scheduled breaks) due to the need to rest because of physical impairments would not be able to perform competitive employment. (*Id.* at PageID 1124.) Therefore, the ALJ's failure to explain his decision to limit Plaintiff to frequent handling, fingering and feeling is not a harmless error.

## V. REMAND AND AWARD OF BENEFITS

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

In this case, the Court finds that the evidence of disability is strong and contrary evidence is lacking. After the ALJ issued his decision, the Social Security Administration issued a new regulation that explains how the agency determines whether an individual retains the residual functional capacity to perform the demands of past relevant work. 20 C.F.R. § 1560; *see also* Social Security Ruling (SSR) 24-2p, 2024 WL 3291790 (S.S.A. June 6, 2024). The regulation revises the definition of past relevant work and requires that the work be performed "within the past five years." 20 C.F.R. § 1560(b)(1)(i). The Social Security Administration began applying the revised definition of past relevant work to applications that were filed on or after the regulation's effective date of June 22, 2024, as well as to claims that are pending on and after that date. SSR 24-2p, 2024 WL 3291790, at *2, n. 1. Therefore, any ALJ who would review Plaintiff's claim upon remand would be required to apply the new definition of past relevant work. *Id.*

In a situation like this one—where an application for Title II disability insurance benefits has a date last insured (DLI) that is in the past—the relevant five-year period ends on the DLI. SSR 24-2p, 2024 WL 3291790, at *3.[4] Accordingly, the relevant period

---

[4] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

in this case ended on the DLI of June 30, 2022.[5] (*See* AR, Doc. No. 6-12 at PageID

1335.) Therefore, only the work that Plaintiff performed within the five years preceding

June 30, 2022 (i.e., since June 30, 2017) constitutes past relevant work under the new

regulation. 20 C.F.R. § 1560; SSR 24-2p, 2024 WL 3291790, at *3.

      The ALJ concluded that Plaintiff was "not disabled" because she was capable of

performing her past relevant work as a secretary and administrative assistant. (Decision,

Doc. No. 6-9 at PageID 1099.) But Plaintiff worked as an administrative assistant from

October 2007 to October 2009, and as a secretary from December 2014 to February 2016.

(*Id.* (citing AR, Doc. No. 6-6 at PageID 417-24; AR, Doc. No. 6-12 at PageID 1338-41).)

Both jobs were performed outside of the five-year period for qualifying as past relevant

work under the new rule. *See* 20 C.F.R. § 1560; SSR 24-2p, 2024 WL 3291790, at *3.

Accordingly, an ALJ reviewing this case upon remand could not find that Plaintiff was

capable of performing any of her past relevant work.[6] Medical-Vocational Rule 201.06

would therefore direct a finding of "disabled" at Step Five of the Sequential Evaluation

(20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00) based on the ALJ's RFC limitations for

---

[5] Plaintiff alleges that the ALJ mistakenly found a DLI of June 30, 2022 and claims that the correct DLI is December 1, 2023. (SE, Doc. No. 7 at PageID 1512 (citing AR, Doc. No. 6-12 at PageID 1335-37).) However, the May 2022 ICERS Earnings Record confirms the ALJ's finding that Plaintiff's DLI is June 30, 2022. (AR, Doc. No. 6-12 at PageID 1335.) Earnings reports that are dated after May 2022 do not show any later earnings that would extend the DLI. (*See, e.g.,* AR, Doc. No. 6-12 at PageID 1335-43.) Also, an updated ICERS Earnings Record that was generated in January 2023 confirms that Plaintiff's DLI is June 30, 2022. (AR, Doc. No. 6-12 at PageID 1344.)

[6] The Vocational Expert also testified at the January 2023 hearing that Plaintiff has past work as a customer service representative, but this work was light in exertion. (AR, Doc. No. 6-9 at PageID 1120.) This job would be precluded by the ALJ's RFC limitations to sedentary exertion. Similarly, the Vocational Expert identified additional past work as a receptionist but noted that Plaintiff last performed the job in March 2006. (*Id.* at PageID 1121.)

sedentary-level exertion, which neither Plaintiff nor Defendant dispute. (*See generally* SE, Doc. No. 7; Mem. In. Opp., Doc. No. 8; and Reply, Doc. No. 9.)

For these reasons, proof of disability is strong and contrary evidence is lacking. Substantial evidence on the record as a whole supports a finding of disability. *Gentry,* 741 F.3d at 730. This case shall therefore be remanded for an award of benefits.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 7) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for an immediate award of benefits; and

4. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge